IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| SHAMPOIRE ORANGE, | |
| Plaintiff, | CIVIL ACTION NO.: 5:19-cv-38 |
| v. | |
| GARY SIMMONS, et al., | |
| Defendants. | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss, doc. 20; Defendants' Motion to Dismiss Amended Complaint, doc. 31; and Plaintiff's Motion to Appoint Counsel, doc. 45.  For the reasons discussed below, I **RECOMMEND** the Court **DENY as moot** Defendants' first Motion to Dismiss, doc. 20, and **GRANT** Defendants' Motion to Dismiss Amended Complaint, doc. 31.  Additionally, the Court **DENIES** Plaintiff's Motion to Appoint Counsel, doc. 45.  Because I have recommended dismissal of all of Plaintiff's claims, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

**BACKGROUND**

On May 20, 2019, Plaintiff filed his original Complaint, asserting claims for excessive force against Defendants Dalton Tomlinson, Gary Simmons, and James Jacobs.  Doc. 1. Specifically, Plaintiff alleges Defendants harmed him while transporting him from the medical unit at Ware County Jail to a rubber room on September 5, 2017.  Id. at 5.  Plaintiff further

alleges Defendants continued to harm him after he was transported to the rubber room and he was denied medical treatment for these injuries. Id. In his original Complaint, Plaintiff states he filed two grievances at Ware County Jail relating to the incident, which are attached to the Complaint. Id. at 7–8; Doc. 1-1 at 2–5. The grievances are dated April 2019, approximately 19 months after the alleged incident. The first of those two grievances states it was rejected as untimely. Doc. 1-1 at 5.

On July 13, 2020, Defendants moved to dismiss Plaintiff's original Complaint. Doc. 20. On July 15, 2020, the Court granted Plaintiff's June 18, 2020 motion to amend his Complaint. Docs. 17, 24. On August 4, 2020, Plaintiff filed an Amended Complaint. Doc. 29. In the "Amended Complaint," Plaintiff refers back to his original Complaint and does not restate the relevant facts. Id. Plaintiff only seeks to add Christian Kirkendall in his individual capacity as a Defendant and add a claim for nominal damages against all Defendants. Id.

On August 18, 2020, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint based on his alleged failure to exhaust administrative remedies. Doc. 31. Plaintiff filed a Response, and Defendants replied. Docs. 34, 36. On October 29, 2020, the Court granted Plaintiff's motion for extension of time to file a reply brief. Docs. 40, 41. The Court allowed Plaintiff until November 30, 2020 to file a surreply. Doc. 41. Plaintiff then submitted a Surreply dated November 19, 2020, which is postmarked December 7, 2020. Doc. 46. The Court still considers Plaintiff's surreply brief, even though the filing appears to be untimely.

**DISCUSSION**

I. **Defendants' First Motion to Dismiss**

An amended complaint supersedes the original complaint, and therefore, generally moots any prior motion to dismiss the original complaint. See Dresdner Bank AG v. M/V Olympia

Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006).  Moreover, Defendants assert similar arguments in their second Motion to Dismiss.  Given that Plaintiff has since filed an Amended Complaint and Defendants have since filed a second Motion to Dismiss, I **RECOMMEND** the Court **DENY as moot** Defendants' first Motion to Dismiss, doc. 20.

II.     **Defendants' Motion to Dismiss Amended Complaint**

In their Motion to Dismiss Amended Complaint, Defendants first argue Plaintiff's two grievances submitted in April 2019 for an event that occurred in September 2017 were untimely under Policy 5.13.  Doc. 31-1 at 5–9.  Second, Defendants argue Plaintiff failed to appeal either of these grievances, as required.  Id. at 9–11.  Third, Defendants assert Plaintiff's claims against Defendant Kirkendall are barred by the statute of limitations and do not relate back to Plaintiff's original Complaint.  Id. at 11–14.

In his Response, Plaintiff asserts he did file a grievance on September 8, 2017, which he submits as an exhibit.  Doc. 34 at 2; Doc. 34-1.  In their Reply, Defendants claim Plaintiff never submitted the September 8, 2017 grievance because the exhibit does not contain a grievance number and was not the grievance form that was in use in the Ware County factility in 2017.  Doc. 36 at 7.  Indeed, Defendant offered testimony from Captain Pittman that the purported September 8, 2017 grievance is on a revised form that was used in 2019, not 2017.  Doc. 36-1 at 2. Defendants suggest Plaintiff, at a minimum, never filed the grievance, or worse, falsified the grievance.  In his Surreply, Plaintiff claims two grievance forms were in use by the jail in 2017, implying the 2019 revised form was used earlier than Captain Ptitman testified.  Doc. 46 at 3.  He also states the grievance is a "personal copy," and a Grievance Officer Ralph Pittman told him someone at the jail probably threw away his filed grievance.  Id.

A.     **Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008).  "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action.  Id. at 1374 (internal punctuation and citation omitted).  A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the Court.  Id.  In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Id. at 1376.

B.     **Exhaustion Analysis**

1.     *Legal Requirements for Exhaustion.*

Where Congress explicitly mandates, prisoners seeking relief for constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court.  See Porter v. Nussle, 534 U.S. 516, 524 (2002).  Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  In Porter, the United States Supreme Court held exhaustion of available administrative remedies is mandatory.  Porter, 534 U.S. at 523.  The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."

4

Id. at 90–91.  In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007); see Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); Wright v. Langford, 562 F. App'x 769, 776 (11th Cir. 2014) (finding district court did not err in dismissing plaintiff's claim for failure to exhaust when plaintiff did not file within five-day grievance filing period).

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit Court of Appeals clarified how the lower courts are to examine the issue of exhaustion of administrative remedies.  First, the court is to take the plaintiff's version of the facts regarding exhaustion as true.  Id. at 1082.  If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed.  Id.  However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true.  Id.  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

### 2. *Grievance Procedure.*

Policy 5.13 governs grievance procedures at Ware County Detention Center.  Doc. 20-2 at 2–3.  Policy 5.13 states complaints regarding "the commission of a prohibited act by a jail officer, a violation of the inmate's civil rights, or a criminal act" must be addressed through the

formal grievance system.  Id. at 4.  The policy states formal written grivances may be filed "within five days of discovery or when [an inmate] reasonably should have discovered the incident."  Id.  Once an inmate submits a grievance, the Jail Administrator must log the grievance in the Grievance Log Book and provide the inmate with a written receipt.  Id.  After receiving a formal response to the grievance, the inmate must accept the response or appeal within three days.  Id. at 4–5.

### 3. *Assessment of Plaintiff's Exhaustion.*

At Turner step one, the Court should not grant Defendants' Motion to Dismiss, taking Plaintiff's version of the facts as true.  Plaintiff claims he filed a grievance within the time period required under Policy 5.13 and was denied his right to appeal this grievance after prison officials possibly threw away his grievance and transferred him to another facility.  Doc. 46.  At Turner step one, taking Plaintiff's allegations as true, Plaintiff has arguably exhausted his administrative remedies.

Defendants dispute whether Plaintiff filed a grievance within the time period required by Policy 5.13.  While Plaintiff claims he filed a grievance three days after the incident, Defendants claim Plaintiff never filed such a grievance.  At Turner step two, the Court must resolve this factual dispute to determine whether Plaintiff properly exhausted his administrative remedies.  541 F.3d at 1082.  The Court must go beyond the pleadings to resolve this dispute.

After reviewing the evidence before it, the Court finds Plaintiff did not file a 2017 grievance, as required by Policy 5.13.  Importantly, Plaintiff never alleged he filed a 2017 grievance in either his original Complaint or Amended Complaint.  Doc. 1 at 7–8; Doc. 1-1 at 1–5; Doc. 29.  Instead, Plaintiff affirmatively represented he filed grievances about this incident in April 2019, more than a year and a half after the incident.  Plaintiff even provided documentary

6

evidence he contended supported the submission of these grievances. It was not until Defendants moved to dismiss Plaintiff's claims on the grounds that the April 2019 grievances were untimely that Plaintiff pointed to the September 8, 2017 grievance—a grievance that bears no grievance number, no date received, no response from any grievance officer, and which is on a form that was not in use at the time it was allegedly filed.

In support of their position, Defendants produced an affidavit completed by Jail Administrator Ralph Pittman. Doc. 31-2. Ralph Pittman was in charge of reviewing submitted grievances in September 2017. Id. at 1. Pittman states, "If a grievance does not have a grievance number or does not list the date the grievance was received, the grievance was not filed." Id. Plaintiff's newly produced grievance dated September 8, 2017, does not bear a grievance number or a date received. Doc. 34-1 at 2. Indeed, none of the fields to be completed by prison officials have been filled out, and the grievance only contains Plaintiff's signature. Id. Pittman also states he has reviewed Ware County Detention Center's records, which confirm Plaintiff never filed a grievance on September 8, 2017. Doc. 31-2 at 2. As discussed above, Policy 5.13 requires the Jail Administrator to log any submitted grievance and provide the inmate with a receipt. Doc. 20-2 at 4. Plaintiff has not produced any such receipt.

Furthermore, the form used by Plaintiff casts serious doubt on Plaintiff's claim he submitted this newly produced grievance in 2017. In his Second Supplemental Affidavit, Ralph Pittman states the grievance could not have been filed in 2017 because Ware County Detention Center did not use this grievance form in 2017. Doc. 36-1 at 1. Defendants produce multiple grievances submitted by Plaintiff in 2017 to show the format of the form used in 2017 differed from the 2019 form. Id. at 4–11. Pittman states the 2017 grievance form included "housing

7

unit" and "inmate number" fields, which are not included in the grievance produced by Plaintiff. Id. at 2.

Plaintiff asserts two forms were in use by the facility in 2017, and he was told by prison officials he could use either form. Doc. 46 at 3; Doc. 46-1 at 1. He also appears to argue Defendants must produce a memorandum of some kind showing the change in forms. Doc. 46 at 3. Regardless of whether two forms were in use at the time, the grievance Plaintiff purports to have filed in 2017 still does not demonstrate any proof of submission like a grievance number, a date received, or a signature from a prison official. Doc. 34-1 at 2. This shows Plaintiff most likely never submitted the grievance in 2017. The prison records further confirm Plaintiff never filed this grievance. Doc. 36-1 at 2. Moreover, Plaintiff only claimed to have submitted a grievance in 2017 after Defendants moved to dismiss his Complaint for failure to exhaust. Doc. 1 at 7; Doc. 27 at 1. Plaintiff's allegation that two forms were in use in 2017 is simply not credible.

Based on the evidence presented, the Court finds Plaintiff never submitted a grievance in 2017. The two grievances Plaintiff did file nearly two years later are well outside the five-day filing period under Policy 5.13. Therefore, Plaintiff did not properly exhaust his administrative remedies, as required by Policy 5.13. Even if Plaintiff's 2019 grievances were considered timely, the evidence does not show Plaintiff ever attempted to appeal these grievances.[1] Doc. 31-2 at 2. Because the Court finds Plaintiff did not meet the requirements of Policy 5.13, the Court declines to address whether the claims against Defendant Kirkendall are barred by the statute of limitations.

---

[1] Plaintiff does not ever appear to argue he attempted to appeal any grievances, only that prison officials completed the grievance forms in a manner that made Plaintiff believe he could not appeal. Doc. 34 at 3–4.

For these reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss Amended Complaint.  Doc. 31.  Because I have recommended dismissal of all of Plaintiff's claims, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### III.    Plaintiff's Motion to Appoint Counsel

In this civil case, Plaintiff has no constitutional right to the appointment of counsel.  Wright, 562 F. App'x at 777 (citing Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999)).  "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances."  Id. (citing Bass, 170 F.3d at 1320).  Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner."  Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987); Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).  The Eleventh Circuit Court of Appeals has explained "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court.  Where the facts and issues are simple, he or she usually will not need such help."  McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993)).

The Court has reviewed the record and pleadings in this case and finds no "exceptional circumstances" warranting the appointment of counsel.  Plaintiff has only asserted excessive force and denial of medical treatment claims under § 1983 involving a single incident.  Doc. 1.  The case is not so novel or complex to require the assistance of counsel.  While the Court

9

understands Plaintiff is incarcerated, this Court has repeatedly found "prisoners do not receive special consideration notwithstanding the challenges of litigating a case while incarcerated." Hampton v. Peeples, No. CV 614-104, 2015 WL 4112435, at *2 (S.D. Ga. July 7, 2015). "Indeed, the Eleventh Circuit has consistently upheld district courts' decisions to refuse appointment of counsel in 42 U.S.C. § 1983 actions similar to this case for want of exceptional circumstances." Id. (citing Smith v. Warden, Hardee Corr. Inst., 597 F. App'x 1027, 1030 (11th Cir. 2015)); Wright, 562 F. App'x at 777; Faulkner v. Monroe Cnty. Sheriff's Dep't, 523 F. App'x 696, 702 (11th Cir. 2013); McDaniels, 405 F. App'x at 457; Sims v. Nguyen, 403 F. App'x 410, 414 (11th Cir. 2010); Fowler, 899 F.2d at 1091, 1096; Wahl, 773 F.2d at 1174). This case is not so complex legally or factually to prevent Plaintiff from presenting "the essential merits of his position" to the Court. The Court has provided Plaintiff instructions regarding the course of proceedings. Doc. 9. For these reasons, the Court **DENIES** Plaintiff's Motion to Appoint Counsel. Doc. 45.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DENY as moot** Defendants' first Motion to Dismiss, doc. 20, and **GRANT** Defendants' Motion to Dismiss Amended Complaint, doc. 31. Additionally, the Court **DENIES** Plaintiff's Motion to Appoint Counsel, doc. 45. Because I have recommended dismissal of all of Plaintiff's claims, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed

to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 4th day of January, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA